GREGORY S. POWELL (SBN 182199)
Assistant United States Trustee
PAUL G. LEAHY (SBN 320775)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: paul.leahy@usdoj.gov

Attorneys for Peter C. Anderson
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>TIPPETT STUDIO, INC.,<br><br>Debtor. | Case No. 24-40657-WJL<br><br>Chapter 11<br><br>Date: August 27, 2025<br>Time: 10:30 a.m. Pacific Standard Time<br>Place: In Person or Zoom Videoconference<br>1300 Clay Street, Courtroom 220<br>Oakland, CA 94612<br><br>Judge: Hon. William J. Lafferty |

**UNITED STATES TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. § 1112(b) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 1017(f) AND 9014, TO CONVERT OR DISMISS CASE AND RESERVATION OF RIGHTS**

Peter C. Anderson, the United States Trustee for Region 17 (the "U.S. Trustee"), by and through the undersigned counsel, hereby files this *Motion, Pursuant to 11 U.S.C. § 1112(b) and Federal Rules of Bankruptcy Procedure 1017(f) and 9014, to Convert or Dismiss Case* (the "Motion") of Tippett Studio, Inc. (the "Debtor").[1]

[1] Hereafter, all references to "Section" in the Motion are to provisions of the Bankruptcy Code, 11 U.S.C. section 101 et. seq., unless otherwise indicated. All references to "Fed. R. Bankr. P." are to the Federal Rules of Bankruptcy Procedure.

## I. INTRODUCTION

"Cause" exists to convert this case because the Debtor appears to have an inability to effectuate substantial consummation of a confirmed Chapter 11 plan and has already defaulted on the plan's requirement that the Debtor timely file operating reports and pay U.S. Trustee quarterly fees when due. It is also not immediately clear whether the Debtor has timely filed and paid post-petition taxes.

The U.S. Trustee reserves all rights with respect to this matter, including the right to take any appropriate action under Title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, and the local bankruptcy rules of the United States Bankruptcy Court. The U.S. Trustee also reserves the right to supplement this Motion with additional facts or arguments for cause to convert or dismiss the Debtor's case or in reply to any response filed by Debtor to this Motion.

This Motion is supported by the following Memorandum of Points and Authorities incorporated herein, the record in this case,[2] and the Declarations of Nychelle Rivera, Bankruptcy Analyst for the U.S. Trustee (the "Rivera Decl.") and Ianthe del Rosario, Paralegal Specialist for the U.S. Trustee, filed herewith (the "del Rosario Decl.").

## II. BACKGROUND FACTS

1. The Debtor filed a voluntary chapter 11 petition commencing this case (the "Petition") on May 1, 2024 (the "Petition Date"). ECF No. 1. The Debtor filed a Summary of Assets and Liabilities for Non-Individuals (a "Summary"), Schedules A through H ("Schedules"), Statement of Financial Affairs ("SOFA"), and other documents required to be filed by 11 U.S.C. § 521 with the Petition. *See id.*

2. The Debtor is represented by Chris Kuhner of Kornfield, Nyberg, Bendes, Kuhner & Little, P.C. *See* ECF Nos. 1, 38, 39 & 44.

---

[2] The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Objection contains factual assertions predicated upon statements made by Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

3. The Debtor filed a Motion for Approval of Use of Cash Collateral (the "Cash Collateral Motion"), Motion for Authorization to Pay Pre-Petition Payroll (the "Prepetition Wages Motion"), and a Motion for Approval of Post-Petition Borrowing (the "Borrowing Motion") on May 3, 2024, which the Court thereafter granted in relevant part. *See* ECF Nos. 8, 9, 10, 11, 28, 29 & 30.

4. The Borrowing Motion provided that Phantom Visual Effects Limited ("Phantom") would provide the Debtor with $700,000 to fund the Debtor's ordinary post-petition operations and additionally would provide a further $2,000,000 to fund a Chapter 11 plan of reorganization. *See* ECF No. 10 at 1-5. The order granting the Borrowing Motion authorized a first priority post-petition lien on all the Debtor's assets pursuant to 11 U.S.C. § 364(d)(1), excepting prepetition accounts receivable and Chapter 5 claims. *See* ECF No. 52.

5. A meeting of creditors (the "Meeting of Creditors") was held on June 10, 2024, and was continued and concluded on July 12, 2024. *See* Docket *generally*.

6. The Debtor thereafter filed a Combined Plan of Reorganization and Disclosure Statement (October 16, 2024), which the U.S. Trustee objected to, and which objection the Court thereafter overruled. *See* ECF Nos. 90, 91, 96, 99, 101 & 106; Docket *generally*.

7. The Debtor later filed the Combined Plan of Reorganization and Disclosure Statement (November 12, 2024) (the "Plan"), which the U.S. Trustee again objected to, and which objection the Court thereafter again overruled. *See* ECF Nos. 104, 105, 113, 129; Docket *generally*.

8. Although the Court orally confirmed the Plan on January 29, 2025, the Debtor did not lodge an order for over two months, and an order confirming the Plan (the "Confirmation Order") only entered on April 1, 2025. *See* ECF No. 138.

9. The Plan provides in relevant part that "All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due." ECF No. 104 at 7. The Plan also provides that "Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose." *Id.* at 10.

10. The Plan defines what constitutes a material default as follows:

> (c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all members of the affected class.

11. The Plan also provides what remedies parties have upon material default:

> (d) Remedies Upon Material Default." Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

12. The Confirmation Order that the Debtor filed two months after the plan confirmation hearing modified Part 7(a) of the Plan to provide that "The Effective Date will be ten (10) days are [sic] the receipt of the Plan funding pursuant to the terms of the Plan." ECF No. 138.

13. Despite the Court having orally confirmed the Plan during a hearing held on January 29, 2025, the Debtor only thereafter filed a Chapter 11 monthly operating report ("MOR") for January 2025. *See* ECF Nos. 135 & 136; Docket *generally*.

14. The Debtor did not file any MORs for February or March 2025 or a post-confirmation operating report ("PCR") for the first quarter of 2025. *See* Docket *generally*. Despite the Court having entered an order confirming the Plan on April 1, 2025, the Debtor also has not timely filed a PCR for the second quarter of 2025. *See* Docket *generally*.

15. On May 23, 2025, the U.S. Trustee sent an email to the Debtor's counsel informing the Debtor of the failure to file operating reports or pay U.S. Trustee fees and providing notice of apparent default on the terms of the Plan. *See* del Rosario Decl. at ¶6. The U.S. Trustee has since followed up on that request that the Debtor cure the deficiency and file the delinquent operating reports and pay the delinquent fees. *See id.*

16. The U.S. Trustee also requested the Debtor provide the plan effective date referenced in the Confirmation Order. *See id.* at ¶7. The Debtor's counsel thereafter responded that:

> The entity that is investing into the debtor has experiences [sic] delay in getting the funds into the debtor due to restriction getting money out of India and other issues I don't completely understand. That said, they have committed that the funds will be delivered by June 15 and the payments per the plan will be commenced. Once funds are received and notice of effective date will be filed in the case.

*See id.*

17. Phantom's counsel thereafter informed the U.S. Trustee that the Effective Date would not be earlier than July, 2025. *See id.* at ¶8.

18. The Debtor paid estimated U.S. Trustee quarterly fees of $7,727.21 on July 17, 2025 to bring it current. *See* Rivera Decl. at ¶8.

## III. <u>JURISDICTION AND STANDING</u>

19. The Bankruptcy Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 1334 and 157(b).

20. The U.S. Trustee brings this Motion pursuant to the statutory duty to monitor bankruptcy cases under 28 U.S.C. § 586(a)(3). The U.S. Trustee has standing to prosecute the Motion pursuant to 11 U.S.C. §§ 307 and 1112, and Fed. R. Bankr. P. 1017 and 9014.

## IV. <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### A. <u>Cause Exists Under 11 U.S.C. § 1112(b)(1) to Convert or Dismiss this Bankruptcy Case</u>.

21. Under Section 1112(b)(1), "on request of a party in interest, and after notice and a hearing, [a] court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate." Section 1112(b)(1) includes a list of non-exhaustive factors a court may consider; however, a bankruptcy court has broad discretion to determine what constitutes "cause" under § 1112(b) and should "consider other factors as they arise and use its equitable power to reach the appropriate result." *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortg. Entities),* 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) (citing H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977)), *aff'd,* 264 F.3d 803 (9th Cir. 2001).

22. As the movant, the U.S. Trustee bears the burden of establishing by preponderance of the evidence that cause exists. *See Sullivan v. Harnisch (In re Sullivan),* 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) (citation omitted). Where reorganization or rehabilitation is unrealistic or futile, a chapter 11 case may be dismissed or converted even at its outset. *See Johnston v. Jem Dev. Co. v. Johnston (In re Johnston),* 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992). Moreover, if a bankruptcy court determines that there is cause to dismiss or convert, it must also: (1) decide whether dismissal or conversion is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *See In re Sullivan*, 522 B.R. at 612.

**B. There Is Cause to Convert or Dismiss the Case Under Section 1112(b)(4)(M) Because the Debtor Appears to Have Failed to Substantially Consummate the Confirmed Plan.**

23. The "inability to effectuate substantial consummation of a confirmed plan" is "cause" to convert or dismiss a debtor's case. 11 U.S.C. § 1112(b)(4)(M); *see also Hall v. Vance*, 887 F.2d 1041, 1044-45 (10th Cir. 1989) ("[T]he bankruptcy court may dismiss or convert a Chapter 11 case if the debtor is unable to effectuate a plan, which means the debtor lacks the ability to formulate a plan or to carry one out."); *In re Sundale, Ltd.*, 417 B.R. 300, 303 (Bankr. S.D. Fla. 2012) ("If a plan were in material default prior to substantial consummation, the plan could not, logically, be substantially consummated, since it is highly unlikely that a plan in material default could be substantially consummated.").

24. The Court confirmed the Plan in this case in late January 2025. *See* ECF No. 129; Docket *generally*. Despite the Court confirming the Plan in late January, the Debtor and Phantom's counsel did not lodge the Confirmation Order for over two months. *See* ECF No. 137 & 138. It has now been almost six months without the Debtor filing a notice of effective date on the docket and the Debtor has admitted that Plan has not yet obtained the funding for the Plan from Phantom. *See* del Rosario Decl. at ¶7; Docket *generally*. Additionally, the Debtor has failed to file MORs for February and March 2025 or PCRs and has failed to timely pay U.S. Trustee quarterly fees. *See* del Rosario Decl. at ¶7; Rivera Decl. at ¶6; Docket *generally*.

25. Accordingly, the Debtor appears to have failed to substantially consummate the Plan.

### C. Cause Exists to Convert or Dismiss the Case Under 11 U.S.C. § 1112(b)(4)(F), (H), and (N) Because the Debtor Failed to File February or March MORs and PCRs for the First and Second Quarter of 2025.

26. The unexcused failure to satisfy timely any filing or reporting requirement established by title 11 or by any rule applicable to a case under chapter 11 is "cause" to dismiss or convert a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(F). Likewise, a material default by the debtor with respect to a confirmed plan is "cause" that may warrant dismissal or conversion. 11 U.S.C. § 1112(b)(4)(N). The failure timely to provide information reasonably requested by the U.S. Trustee is further "cause" to dismiss or convert a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(H).

27. Among the duties of a debtor-in-possession is the obligation to file periodic operating reports within 21 days after the last day of the month following the month that the report covers. *See* 11 U.S.C. § 1107(a) (incorporating by reference to section 1106(a)(1) the section 704(a)(8) duty to file periodic reports); *see also* Fed. R. Bankr. P. 2015; 28 C.F.R. § 58.8; U.S. TRUSTEE PROGRAM, CHAPTER 11 OPERATING REPORTS, https://www.justice.gov/ust/chapter-11-operating-reports (last visited July 17, 2025).

28. The Debtor has failed to file MORs for February and March 2025 or PCRs for the first and second quarters of 2025 even though the Plan specifically provided that the Debtor would "file with the court quarterly reports in the form specified by the United States Trustee for that purpose." *See* ECF No. 104 at 10; Docket *generally*. Accordingly, the Debtor has failed to satisfy timely the periodic reporting requirement established by Fed. R. Bankr. P. 2015. The Debtor has also failed to comply with the terms of the confirmed Plan and was notified of this Plan default more than a month ago—on May 23, 2025. *See* del Rosario Decl. at ¶6. To the extent the terms of the Plan control, the Debtor has materially defaulted under the terms of the Plan, and since the U.S. Trustee requested this information more than a month ago, has failed timely to provide information reasonably requested. Because the Debtor failed to file the MORs and PCRs, the U.S. Trustee cannot accurately calculate the total fees due, has estimated them based on disbursements in the last MOR, and cannot determine if all fees have been paid. *See* 11 U.S.C. § 1112(b)(4)(K); Rivera Decl. at ¶8.

29. Accordingly, the Debtor has failed to file the MORs and/or PCRs required by Fed. R. Bankr. P. 2015, defaulted under the terms of the confirmed Plan, and failed to cure that deficiency.

### E. <u>Once Cause is Established, the Debtor has the Burden of Establishing All Elements of the Statutory Defenses Available Under 11 U.S.C. § 1112(b)(2)</u>.

30. Once "cause" is established, the burden then shifts to the debtor to demonstrate that § 1112(b)(2) precludes relief under § 1112(b)(1). *See Sanders v. United States Trustee (In re Sanders),* BAP Case No. 12-1398, 2013 WL 1490971 at * 7 (B.A.P. 9th Cir. Apr. 11, 2013). This requires a showing of "unusual circumstances. . . that establish that such relief is not in the best interest of creditors and the estate." *See* 11 U.S.C. §1112(b)(1). "The Code does not define 'unusual circumstances,' but the term contemplates 'conditions that are not common in chapter 11 cases." *In re Products Int'l Co.*, 395 B.R. 101 (Bankr. D. Ariz. 2012).

31. If the bankruptcy court does specifically find and identify such "unusual circumstances," the debtor must also prove (1) there is a reasonable likelihood of plan confirmation within a reasonable time, (2) that the "cause" shown for conversion or dismissal was reasonably justified, and (3) that the cause for conversion or dismissal can be "cured" within a reasonable time. *Green v. Howard (In re Green)*, 2016 Bankr. LEXIS 3963 at *31 (B.A.P. 9th Cir. Nov. 9, 2016) (citing *Warren v. Young (In re Warren),* 2015 Bankr. LEXIS 1775 at *11-12 (B.A.P. 9th Cir. May 28, 2015)). A debtor must establish each of the statutory elements set forth under section 1112(b)(2) because the statute is written in the conjunctive. *In re Om Shivai, Inc*. 447 B.R. 459, 465 (Bankr. D.S.C. 2011); *In Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 717 (Bankr. D. Md. 2011).

32. The record does not reflect any unusual circumstances that would establish justification against granting the relief requested in the Motion.

### F. <u>Conversion Is More Appropriate Than Dismissal</u>.

33. In determining whether to convert a case from chapter 11 to chapter 7 or dismiss it, a bankruptcy court must consider the interests of all creditors. *In re Owens*, 552 F.3d 958, 961 (9th Cir. 2009). Courts generally look to and apply a series of factors in determining which form of relief under section 1112(b)(1) is appropriate once cause for relief has been established:

//

//

(1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

(2) Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

(3) Whether the debtor would simply file a further case upon dismissal.

(4) The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5) In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6) Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7) Whether the estate consists of a "single asset."

(8) Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9) Whether a plan has been confirmed and whether any property remains in the estate to be administered.

(10) Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*See In re Rand*, 2010 WL 6259960, at *10 n.14 (B.A.P. 9th Cir. Dec. 7, 2010) (citing 7 Collier on Bankruptcy ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)).

34. Based upon the available information, the Rand factors four, five, seven, and nine favor conversion over dismissal. First, the Debtor has not filed MORs for February and March 2025 or PCRs for the first and second quarters of 2025. *See* Docket *generally*. Accordingly, it's not immediately clear what assets, if any, remain in the Chapter 11 estate for a Chapter 7 trustee to administer. Additionally, the Borrowing Motion and terms sheet attached to the declaration of Gary Mundell in support of the Borrowing Motion does not appear to indicate what remedies the Debtor has in the event of non-performance by Phantom, and a Chapter 7 trustee could investigate. *See* ECF Nos. 10 & 11. The estate may also possess Chapter 5 claims against the Debtor's officers, directors, and other insiders excepted from the lien authorized by the Borrowing Motion, which a Chapter 7 trustee could also investigate. *See* ECF Nos. 10 & 52.

35. Accordingly, conversion is the more appropriate remedy.

## V. CONCLUSION

Based upon the foregoing, the United States Trustee respectfully requests this Court enter an order (a) granting the Motion; (b) converting this case to Chapter 7; and (c) for such other and further relief as is just under the circumstances.

Dated: July 23, 2025

Respectfully Submitted,

PETER C. ANDERSON
UNITED STATES TRUSTEE

By: */s/ Paul G. Leahy*
Paul G. Leahy
Trial Attorney for the
United States Trustee